IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PATRICIA WALSH,**<br>            **Plaintiff,** | **CIVIL ACTION** |
|         v. | |
| **CAROLYN W. COLVIN,**<br>**Acting Commissioner of Social Security**<br>**Administration,**<br>            **Defendant.** | **NO.  15-2550** |

**DuBois, J.**                                                                                                              **March 8, 2017**

<u>**M E M O R A N D U M**</u>

I.      INTRODUCTION

In this action, plaintiff Patricia Walsh seeks review of the final decision of defendant, the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381–1383f.  The denial was based on a determination by an Administrative Law Judge ("ALJ") that plaintiff was not disabled under the SSA.  By Order dated October 26, 2015, the Court referred the case to United States Magistrate Judge Marilyn Heffley for a Report and Recommendation ("R & R").  On July 28, 2016, Judge Heffley issued an R & R recommending that plaintiff's Motion and Request for Review[1] be denied.  Presently before the Court are plaintiff's Objections to the R & R.  For the reasons that follow, the Court approves and adopts the R & R, overrules plaintiff's Objections, and denies plaintiff's Motion and Request for Review.

---

[1] Plaintiff's Request for Review includes a motion for summary judgment seeking reversal of the Commissioner's decision and remand for a new hearing.  The motion relies on the same arguments as the Request for Review.

## II. BACKGROUND

The background of this case is set forth in detail in Magistrate Judge Heffley's R & R and will be recited in this Memorandum only as necessary to address plaintiff's Objections. Plaintiff applied for SSI on April 24, 2009. Administrative R. ("R.") 14. After her application was denied, plaintiff requested a hearing which was held on May 24, 2011. R & R 2 (citing R. 14, 100). After the hearing, the initial denial was affirmed, and plaintiff appealed. R. 14. A second hearing was held on June 13, 2013, and the ALJ again denied plaintiff's application in a decision dated November 13, 2015. R & R 2 (citing R. 14-27). In concluding that plaintiff was not disabled, the ALJ found that plaintiff suffered from eight severe impairments (obesity, fibromyalgia, migraine headaches, bipolar disorder, depressive disorder, major depressive disorder, generalized anxiety disorder and panic disorder), and seven non-severe impairments. R & R 4 (citing R. 16-17). The ALJ determined that plaintiff's impairments did not, alone or in combination, meet or equal a listed impairment under the SSA. R & R 4 (citing R. 18). Based on her determination of plaintiff's limitations and the testimony of a vocational expert, the ALJ found that plaintiff was capable of performing jobs that existed in significant numbers in the national economy and was thus not disabled under the SSA. R & R 4-5 (citing R. 20, 26-27).

The Appeals Council denied plaintiff's request for review on April 1, 2015, and the ALJ's determination was thus affirmed as the Commissioner's final decision. R & R 2 (citing R. 1-2). Plaintiff commenced this action seeking review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) on May 13, 2015.

## III. APPLICABLE LAW

A district court evaluates *de novo* those portions of a magistrate judge's report and recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). The Court may

"accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

Judicial review of the Commissioner's final decision is limited. The Court reviews the Commissioner's denial of benefits to "determine whether it is supported by substantial evidence on the record as a whole" and applied the correct legal standards. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 359 (3d Cir. 2004); *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Although substantial evidence is more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 F.3d at 359-60 (quoting N*ewell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003)).

To establish a disability under the SSA, the claimant must demonstrate some "medically determinable basis for an impairment that prevents her from engaging in any substantial gainful activity" for the statutory period. *Diaz v. Comm'r of Soc. Sec.*, 577 F. 3d 500, 503 (3d Cir. 2009) (quotation marks and citations omitted); 42 U.S.C. § 423(d)(1)(A). A claimant bears the initial burden of proving the existence of a disability. *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). Once the claimant satisfies this burden, the burden of proof shifts to the Commissioner to show that the claimant "has the capacity to perform specific jobs that exist in the national economy." *Id.*

Disability claims are evaluated using a "five-step sequential evaluation" of whether a claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can perform past relevant work based on her residual functional capacity; and (5) if not, can perform other work in view of her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520; *see*

*McCrea*, 370 F.3d at 360. In deciding a disability claim, "an ALJ must clearly set forth the reasons for [her] decision. Conclusory statements that a condition does not constitute a medical equivalent of a listed impairment are insufficient. The ALJ must provide a discussion of the evidence and an explanation of reasoning for [her] conclusion to sufficiently enable meaningful judicial review." *Diaz,* 577 F. 3d at 504 (quotation marks and citations omitted). However, the ALJ "need not employ particular magic words[,] . . . particular language[,] or adhere to a particular format in conducting [the] analysis." *Id.* (quotation marks omitted).

### IV. DISCUSSION

Plaintiff objects to the R & R on the grounds that Magistrate Judge Heffley erred in her conclusions that (1) the ALJ properly evaluated the evidence of plaintiff's obesity, fibromyalgia, and migraine headaches; (2) substantial evidence supported the ALJ's determination that plaintiff's impairments did not meet or equal the criteria of the mental impairment listings; and (3) the ALJ permissibly relied on the testimony of the vocational expert. The Court addresses each objection in turn.

**A. Plaintiff's First Objection**

Plaintiff first objects to Judge Heffley's conclusion that the ALJ adequately evaluated the effects of plaintiff's obesity, fibromyalgia, and migraine headaches, and the combined effect of plaintiff's impairments. Obj. 6, 10. The Court addresses each of plaintiff's arguments in turn.

*1. Obesity*

In determining whether a claimant is disabled, "an ALJ must meaningfully consider the effects of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F. 3d at 504. Plaintiff makes two arguments with respect to the ALJ's consideration of plaintiff's obesity.

First, plaintiff argues that "[t]he essence of the [R & R] appears to be that because the ALJ stated that she considered obesity, the conclusion is sufficient even though the ALJ did not undertake any substantive analysis of the actual evidence." Obj. 6. Plaintiff asserts that the ALJ failed in her obligation to provide a specific analysis of the evidence of plaintiff's obesity and her resulting impairment. Obj. 6.

The Court rejects this argument. Judge Heffley concluded that the ALJ had adequately addressed the effects of plaintiff's obesity, alone and in combination with plaintiff's other impairments. On this issue, Judge Heffley concluded that the ALJ recognized her obligation to consider, and stated that she did consider at step three, "'the combined effect of Walsh's obesity and other impairments in her analysis, even though no treating or examining medical source indicated that Walsh suffered any functional limitation that was caused or exacerbated by her obesity.'" R & R 6 (citing R. 18). The ALJ also "expressly recognized that Walsh asserted that her obesity negatively affected her mental health and that her mental health problems caused her to gain weight, but stated that Walsh admitted she had not reported that effect to her mental health providers or discussed it with them." R & R 6 (citing R. 18, 21). Furthermore, in determining plaintiff's residual functional capacity ("RFC"), the ALJ "included 'exertional and environmental limitations as well as limitations to unskilled work with limited social interaction,'" R & R 7 (citing R. 18), and limited plaintiff's RFC accordingly. R & R 7 (citing R. 20). Judge Heffley noted that the ALJ included these limitations after consideration of state psychologist Dr. Perch's opinion that plaintiff "was 'able to meet the basic mental demands of competitive work on a sustained basis,'" the lack of objective medical evidence of any functional physical limitations caused by plaintiff's obesity, and the ALJ's determination that the plaintiff's self-reporting was not credible. R & R 7 (citing R. 20, 49, 115).

Judge Heffley further noted that, even if the ALJ had not properly analyzed the effect of plaintiff's obesity, plaintiff had failed to point to any medical evidence in the record to support her claim that her obesity and other impairments resulted in disability or to explain how the limitations found by the ALJ were inadequate. R & R 7 (citing *Woodson v. Comm'r of Soc. Sec.*, Civil Action No. 14-6129 (SRC), 2015 WL 7760187, at *2 (D.N.J. Dec. 2, 2015) ("Plaintiff thus bears the burden . . . of showing not merely that the Commissioner erred, but also that the error was harmful.")). Thus, Judge Heffley concluded that any failure by the ALJ to consider plaintiff's obesity would amount to harmless error. R & R 8 (citing *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (non-precedential) (stating that the appellant must "'explain [ ] ... how the ... error to which he points could have made any difference.'" (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Having reviewed the record, the Court agrees with Judge Heffley's conclusion that the ALJ expressly considered the effects of plaintiff's obesity alone and in combination with her other impairments. Furthermore, the Court agrees that any error in the ALJ's analysis of plaintiff's obesity would be harmless.

Second, plaintiff argues that Judge Heffley erred by relying on *Rutherford v. Barnhart,* 399 F.3d 546 (3d Cir. 2005), to find that the ALJ sufficiently analyzed the effects of plaintiff's obesity by relying on Dr. Perch's opinion of plaintiff's level of impairment. Obj. 6. In *Rutherford*, the United States Court of Appeals for the Third Circuit concluded that the ALJ's analysis of the claimant's obesity did not require remand where the plaintiff did not assert and the ALJ did not find obesity to be a severe impairment, and the ALJ relied on medical reports by doctors who "must . . . be viewed as aware of [the claimant's] obvious obesity." 399 F.3d at 553. Plaintiff argues that the ALJ may not rely on Dr. Perch's opinion because Dr. Perch did not

analyze the effects of plaintiff's obesity and the ALJ was required to specifically evaluate the evidence of plaintiff's obesity. Obj. 6-7. *See Diaz*, 577 F.3d at 504-05 (distinguishing *Rutherford* and remanding because ALJ failed to consider the effect of obesity after finding obesity to be a severe impairment at step two).

The Court rejects this argument because plaintiff mischaracterizes the extent to which the R & R relies on the holding of *Rutherford*. Far from concluding that the ALJ's analysis of plaintiff's obesity was sufficient because she relied on Dr. Perch's opinion, the R & R concluded that the ALJ specifically considered the effect of plaintiff's obesity. R & R 6 (citing R. 18-20). Furthermore, "[n]otwithstanding" Dr. Perch's conclusion regarding plaintiff's abilities, the ALJ imposed restrictions based on plaintiff's obesity and other impairments. R & R 6 (citing R. 18-20); *see also Diaz*, 577 F.3d at 504 ("Were there *any* discussion of the combined effect of Diaz's impairments we might agree with the District Court [that the ALJ's consideration of obesity was adequate].").

   *2. Fibromyalgia and Migraine Headaches*

Judge Heffley concluded that the ALJ adequately analyzed plaintiff's fibromyalgia and migraine headaches because the ALJ considered an applicable listed impairment and plaintiff did not provide evidence of any impairment arising from her fibromyalgia or migraine headaches. Obj. 9. The plaintiff objects to this conclusion. The Court rejects plaintiff's argument.

With respect to fibromyalgia, Judge Heffley concluded that "[t]he ALJ specifically considered whether Walsh met Listing 1.02, which addresses 'major dysfunction of a joint (due to any cause).'" R & R 10 (citing R. 18). Judge Heffley further found that the ALJ applied the language of Listing 1.02 and that, based on the record, plaintiff "was able to ambulate effectively and that her fibromyalgia did not cause her to suffer an inability to perform fine or gross

movements effectively." *Id.* Judge Heffley went on to state that substantial evidence supported the ALJ's conclusion that plaintiff's subjective accounts of her pain were not credible, including numerous inconsistencies between plaintiff's testimony, self-reports, and medical evidence. R & R 11-13 (citing R. 21-25). She also noted that plaintiff had not identified what precise restrictions stem from her fibromyalgia. R & R 9-14.

With respect to migraine headaches, Judge Heffley noted that plaintiff "offer[ed] no citation to any evidence regarding any functional limitations those headaches may have imposed" and thus "any shortcoming by the ALJ in discussing her reasoning regarding those headaches does not provide a basis for remand." RR 14 n. 4.

Having reviewed the record, the Court agrees with the Judge Heffley's conclusion that the ALJ adequately analyzed the effect of plaintiff's fibromyalgia and migraine headaches. The Court notes that, in addition to the portions of the record cited in the R & R, the ALJ found that plaintiff's "headaches are stress-related and treated with medication." R. 25. Furthermore, the Court agrees that any deficiency in the ALJ's analysis of this issue constitutes harmless error because plaintiff has failed to specify what additional impairments were caused by her fibromyalgia and migraine headaches and not included in the limitations imposed by the ALJ. *See Holloman*, 639 F. App'x at 814.

### 3. The Combined Effect of Plaintiff's Impairments

Finally, plaintiff objects to the R & R's rejection of her argument that the ALJ failed to address the combined effect of plaintiff's impairments. Obj. 10.

To the extent that this is a "general" rather than a "specific" objection to the R & R, it is overruled. *See, e.g., Palmer v. Apfel,* 995 F. Supp. 549, 552 n. 4 (E.D. Pa. Feb. 9, 1998) ("A party who files objections to a magistrate judge's Report and Recommendation is obliged to file

'specific' objections . . . . General or blanket objections do not comply with Rule 72(b) and need not be addressed by the district court." (citations omitted)). Even if the Court considers plaintiff's argument on the merits, for the reasons already stated, the Court agrees with the Judge Heffley's conclusion that the ALJ adequately addressed the effect of plaintiff's impairments, alone and in combination. *See also Morrison v. Comm'r of Soc. Sec.*, 268 Fed. App'x 186, 189 (3d Cir. 2008) (non-precedential) ("The ALJ . . . explicitly indicated a number of times that [s]he was considering the impairments in combination. We see no reason not to believe [her].").

Accordingly, the Court overrules plaintiff's first objection.

### B. Plaintiff's Second Objection

Plaintiff objects to Judge Heffley's conclusion that substantial evidence supported the ALJ's finding that plaintiff did not meet or equal the "B criteria" of Section 12.04 of the listed mental impairments. In step three of the analysis of a disability claim, a claimant must prove that her impairments meet or equal the criteria of a listed impairment. To meet § 12.04(B), the claimant must have marked or repeated levels of impairment in two of four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; or (4) episodes of decompensation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B) (amended by 81 FR 66138-01, effective January 17, 2017). Plaintiff presents three arguments in support of this objection.

First, plaintiff argues that the ALJ erred because she did not consider the restrictions from plaintiff's "psychiatric problems" in her analysis of plaintiff's mental impairments, including the statement of plaintiff's primary care provider that many of plaintiff's symptoms "stem from her psychiatric illness," and the statement of her rheumatologist that plaintiff's impairments have a "prominent psychological component." Obj. 11 (citing R. 22, 498).

9

The Court disagrees. The ALJ noted the psychological component of plaintiff's reported symptoms, R. 21, 22, but found no medical evidence to support plaintiff's claim that she satisfied the criteria of a listing based on those symptoms. R. 18, 22. Furthermore, the ALJ stated that she had found plaintiff's self-reports of her symptoms not credible. R. 21, 23-25. On this record, the Court concludes that the ALJ adequately considered plaintiff's reports of her symptoms. R. 18, 21.

Second, plaintiff argues that the ALJ erred when she did not consider the effect of plaintiff's diagnosis of Borderline Personality Disorder. Obj. 11 (citing to R. 592, 594, 596, 598, 1187). However, Judge Heffley found that "the ALJ explicitly found that Walsh did not meet or equal Listing 12.08, . . . the listing regarding personality disorders." R & R 15 n. 5 (citing R. 18). Judge Heffley went on to state that "personality disorders are evaluated using the same B criteria that the ALJ applied to evaluating Walsh's other mental health disorders, and the ALJ found Walsh did not meet those criteria." *Id.* Plaintiff presented no objection or argument with respect to Judge Heffley's analysis, and the Court agrees with the conclusion of the R & R on this issue.

Third, plaintiff argues that the Judge Heffley erred in finding that substantial evidence supports the ALJ's finding that plaintiff had only mild or moderate restrictions in the areas of (1) activities of daily living; (2) social functioning; and (3) maintaining concentration, persistence, or pace. The Court addresses each area in turn.

*1. Activities of daily living*

Plaintiff argues that the ALJ erred when she found that plaintiff had only mild restrictions in daily living because the ALJ "mischaracterize[ed]" the record. Obj. 15. Specifically, plaintiff contends that the ALJ incorrectly found that plaintiff has no difficulties in personal care, can make simple meals, and can complete her own chores, including laundry and cleaning her room.

Obj. 15 (citing R. 19).  Plaintiff argues that she does not cook but makes sandwiches or prepares canned food twice a month, that her mother cooks everything else, and that she needs help carrying things if they are heavy or she is having a mood swing.  Obj. 15 (citing R. 370).  Plaintiff argues that, in the R & R, Judge Heffley "independently searched the record for evidence that supports the ALJ's determination, but . . . was not relied upon by the ALJ in reaching her decision."  Obj. 15 (citing *Fargnoli v. Massanari*, 247 F.3d 34, 44 n. 7 (3d Cir. 2001).  Significantly, plaintiff does not identify what evidence, if any, included in the R & R was not discussed by the ALJ.

The Court rejects plaintiff's argument.  Judge Heffley determined that the ALJ's assessment that plaintiff suffered only mild restrictions in activities daily living was supported by substantial evidence.  R & R 21.  This evidence included plaintiff's report of her daily activities, including personal care, meal preparation, and household chores, discussed by the ALJ in step three of the analysis, R. 19 (citing R. 368-69), and Dr. Perch's finding that plaintiff was "able to follow a schedule, prepare simple meals, perform routine household tasks, use public transportation, shop, handle bills, and follow her interests," discussed by the ALJ in assessing plaintiff's RFC.  R & R 24 (citing R. 497).  The ALJ did not list the entirety of the evidence she relied on in step three, but "made clear . . . that she was addressing the listing criteria in more detail in the course of her RFC analysis in step four" and was "not required to restate all of the evidence [she relied] on in discussing each step of the analysis."  R & R 21, 24 (citing R. 20 and *Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007)).  The Court agrees.

Judge Heffley also concluded that the ALJ had properly discounted contradictory evidence of plaintiff's level of restriction in her activities of daily living from a single Functional Assessment and plaintiff's self-report.  R & R 10-12, 16-21.  On this issue the Court notes that

plaintiff does not specifically object to Judge Heffley's analysis of ALJ's assessment of this evidence.  After reviewing the record, the Court agrees the ALJ's determination that plaintiff has only mild restrictions in her activities of daily living is supported by substantial evidence.

*2. Social Functioning*

Plaintiff argues that "the ALJ provided a sparse explanation" for her finding that plaintiff has only moderate limitations in social functioning and failed to consider plaintiff's "prolonged and near constant issues with her family and her treating doctors."  Obj. 14 (citing R. 19, 63, 703-04, 708, 697, 699, 711, 715, 717).  The Court rejects these arguments.

With respect to plaintiff's relationship to her treating physicians, Judge Heffley concluded that "although there was evidence of Walsh having disputes with her doctors about her diagnosis, treatment and benefits applications, there was no evidence that she was incapable of interacting with the public, or cooperating with coworkers or supervisors in the workplace."  R & R 22-23.  With respect to plaintiff's relationship to her family, Judge Heffley stated that "the only evidence of [the difficulties with her mother and sister] are Walsh's own statements, which the ALJ properly found were not credible . . . and [a single Functional Assessment] of her functional abilities, which the ALJ properly discredited."  R & R 23.  Judge Heffley thus determined that plaintiff "failed to meet her burden to establish that she had marked difficulties in social functioning," and that the ALJ's determination that plaintiff did not have marked limitations in social functioning was supported by substantial evidence, including Dr. Perch's opinion based on plaintiff's medical records and the evidence in those records.  R & R 23.

The Court agrees that substantial evidence supports the conclusion that plaintiff suffered only moderate limitations in social functioning.  The ALJ considered plaintiff's relationship with her treatment providers and specifically discussed plaintiff's experiences with doctors at

12

Northwestern Human Services and Drexel Department of Psychiatry. R. 23-24. On this issue, the ALJ "note[d] that the record indicates that the claimant was quick to change providers if she disagreed with their findings, opinions, requests, or recommendations." R. 25. While the ALJ's analysis did not specifically refer to plaintiff's relationship with her mother and sister, the ALJ properly discounted the only evidence regarding those difficulties. R & R 23. Furthermore, plaintiff provides no explanation with respect to how the limitations imposed by the ALJ were insufficient to account for her relationship with her mother and sister. Thus, any error in the ALJ's analysis of plaintiff's level of social functioning from failing to specifically consider plaintiff's relationship with her family would be harmless.

    *3. Maintaining Concentration, Persistence, or Pace*

Plaintiff argues that the ALJ's explanation of her finding that plaintiff had only moderate limitations in concentration, persistence, or pace "was manifestly insufficient." Obj. 12. Plaintiff further contends that the ALJ's conclusion is contradicted by plaintiff's reports that she is unable to get out of bed due to her fibromyalgia pain, periodically has trouble with her memory and focusing on daily chores due to her depression, experiences anxiety every day, and has panic attacks. Obj. 13 (citing to R. 66, 69, 687, 694, 697, 702, 711).

The Court disagrees. Judge Heffley concluded that the ALJ properly discounted plaintiff's self-reports of her symptoms as not credible, and "relied on the repeated evaluations of [plaintiff's] treating physician's contained in her medical records that found no deficiencies in her mental skills" and on Dr. Perch's evaluation that, despite plaintiff's moderate difficulties in this area, plaintiff was "able to meet the basic mental demands of competitive work on a sustained basis." R & R 23-24. This Court's review of the record comports with Judge Heffley's conclusion. The ALJ's determination that plaintiff suffered only moderate restrictions in

13

maintaining concentration, persistence, and pace is supported by substantial evidence. For the reasons discussed above, the ALJ properly found plaintiff's self-reporting to be not credible. In addition to the portions of the ALJ's determination cited by plaintiff, Obj. 12, the ALJ discussed the evidence contained in plaintiff's medical reports in which no deficiencies in her mental abilities were noted. R. 23-24 (citing R. 509, 587, 603, 624-25). The ALJ need not repeat the evidence she relied on in step three of her analysis when she stated that she included, and did include, this evidence in her determination of plaintiff's residual functional capacity in step four. *Cop*, 226 F. App'x at 208.

Accordingly, the Court overrules plaintiff's second objection.

### C. Plaintiff's Third Objection

Plaintiff's third and final objection is that Judge Heffley erred in concluding that substantial evidence supported the ALJ's determination that plaintiff can perform work that exists in significant numbers in the national economy. Plaintiff argues that ALJ erroneously relied on the vocational expert's ("VE") response to a hypothetical posed by the ALJ because the hypothetical did not explicitly include plaintiff's moderate limitation in concentration, persistence, or pace. Obj. 16, 19. Specifically, plaintiff argues that the hypothetical question did not include plaintiff's limitations in concentration, persistence or pace, and instead limited plaintiff to "simple routine tasks with short, simple instructions, simple work related decisions with few workplace changes, no interaction with the public and no more than occasional interaction with coworkers and supervisors." Obj. 18-19.

Judge Heffley determined that ALJ's hypothetical "adequately conveyed" the full extent of Walsh's established limitations. R & R 29 (citing *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004)). In this objection, plaintiff urges the Court "to follow the rule . . . that '[t]he

ALJ's failure to include all of plaintiff's credibly established mental impairments [is] error, particularly considering that the burden was on the Commissioner at Step Five to prove that Plaintiff could perform a job that exists in the national economy.'"  Obj. 18 (citing *Drelling v. Colvin*, No 14-CV-2211, 2016 WL 245288, at *8 (E.D. Pa. Jan. 20, 2016).

The Court rejects plaintiff's argument that the hypothetical posed by the ALJ did not adequately convey plaintiff's limitations. A hypothetical "must include all of a claimant's impairments." *Ramirez*, 372 F.3d at 553. However, contrary to plaintiff's assertion, this does not require that the hypothetical explicitly state each limitation; rather it requires that the hypothetical "reflect" and "adequately convey" each of the claimant's limitations. *Ramirez*, 372 F.3d at 555. Nothing in the record suggests that the restriction to "simple routine tasks with short, simple instructions" and "simple work related decisions with few workplace changes" did not adequately reflect and convey plaintiff's limitations in concentration, persistence, or pace. *See, e.g., Menkes v. Astrue*, 262 Fed. App'x 410, 412-13 (3d Cir. 2008) (non-precedential) (no error in hypothetical question restricting work to "simple routine tasks" where ALJ found moderate limitations in concentration, persistence, and pace). *Cf. Drelling*, 2016 WL 245288, at *8 (finding error where hypothetical made no mention of plaintiff's mental limitations, despite finding moderate impairment concentration, persistence, and pace).

Accordingly, the Court overrules plaintiff's third objection to the R & R.

## V.     CONCLUSION

For the foregoing reasons, the R & R is approved and adopted, plaintiff's Objections are overruled, plaintiff's Motion and Request for Review is denied, and judgment is entered in favor of defendant and against plaintiff. An appropriate order follows.